UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASMINE I. HOLLEY,

                Plaintiff,

      v.

SPARTAN AUTO GROUP, LLC dba VICTORY
MITSUBISHI and CAPITAL ONE AUTO
FINANCE, a division of CAPITAL ONE, N.A.,

              Defendants.

---

Case No.:

## **COMPLAINT**

Plaintiff, Jasmine I. Holley ("Plaintiff") brings this action to secure redress  against unlawful, unfair, abusive, and deceptive business practices engaged in by defendants, Spartan Auto Group, LLC Victory Mitsubishi ("Dealer") and Capital One Auto Finance, Inc., a division of Capital One, N.A., (the "Bank" and together with the Dealer, "Defendants") relating to a financed automobile purchase transaction and alleges as follows:

## **NATURE OF THIS ACTION**

1.      In March 2023, Plaintiff found advertised for sale with the Dealer, a used 2019 Jeep Cherokee, Vehicle Identification Number 1C4PJMDX6KD229014 (the "Vehicle") at the advertised price of $18,040.00.  The parties came to terms on Plaintiff's financed purchase of the Vehicle.  Soon after taking delivery of the Vehicle, Plaintiff discovered that the Vehicle's sale price, as stated in a written sales agreement,  the terms of which were hidden from Plaintiff, had been grossly inflated and packed with costly add-ons Plaintiff did not want, did not ask for, and did not agree to buy.  Worse, Plaintiff discovered that two sets of sale documents were created

one of which, a forgery, materially differs from the terms of the transaction to which Plaintiff Agreed.

2.      Plaintiff also discovered that the Vehicle was defective and unable to pass inspection.

3.      In this action Plaintiff seeks, among other things, statutory and actual money damages against Defendants for, *inter alia*, violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the New York Motor Vehicle Retail Installment Sales Act, Sec. 302 *et. seq.* ("NY MVRISA"); New York General Business Law §§ 349 and 350, NY Vehicle & Traffic Law §17 ("VTL §417"), breach of express and implied warranties, violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq*., and common law claims for fraud.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 15 U.S.C. § 1640.

5.      This Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and § 2202.

6.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.      Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and the Dealer maintains offices, transacts business, and is otherwise found in this district.

## PARTIES

8.      Plaintiff is a natural person residing in Philadelphia, Pennsylvania.

9.     Upon information and belief, the Dealer, a used car dealership, is a domestic corporation organized and existing under the laws of the State of New York with a place of business located at 4070 Boston Rd., Bronx , NY 10475.

10.     Upon information and belief, the Bank is a national banking association and, among other things, provides automobile loans and loan servicing nationwide including in the State of New York.

11.     The Bank is, upon information and belief, assignee of Plaintiff's contracts with the Dealer and, as a result, is subject to all claims and defenses pursuant to federal and New York law.

### FACTS

12.     Plaintiff was searching online for a used vehicle and found the Vehicle advertised for sale with the Dealer at the advertised price of $18,040.00.



13.     On March 12, 2023, Plaintiff traveled from her home in Pennsylvania to the Dealer's dealership and was introduced to a sales representative identified as "Jaiden Vasquez" from whom Plaintiff agreed to purchase the Vehicle.

14.     Plaintiff was then introduced to a finance representative to complete a credit application and finalize the sale.  Despite the Vehicle having been advertised for $18,040.00, the finance representative insisted that the Vehicle would be sold for the increased price of $22,170.00 to which Plaintiff agreed.

15.     It was agreed that Plaintiff would make a $10,170.00 down payment with the balance to be financed.

16.     Plaintiff was presented with a series of documents and, in quick succession, was told where and when to sign and initial.  Despite not having been given a sufficient and reasonable opportunity to review the documents she was being instructed to sign, Plaintiff observed that the sale price listed was $30,802.72, not the as advertised or as agreed.  Plaintiff questioned the Dealer's finance representative about the discrepancy and was falsely told that the $30,802.72 was an "average figure" and that Plaintiff would only have to pay the agreed price.

17.     Plaintiff was then directed to travel to a different location located at 4101 Boston Rd., Bronx, NY 10466.  The relationship of the dealer to this location was not explained.  Mr. Vasquez drove the Vehicle to the facility at 4101 Boston Rd. where he asked Plaintiff to sign an additional document which was not explained to her and a copy of which was not provided.  It was at the 4101 Boston Rd. location where Plaintiff was ultimately handed keys to the Vehicle which she then drove home to Pennsylvania.

18.     Plaintiff was not directly presented with copies of any of the documents she signed but was presented with e USB thumb-drive on which she was told that the documents were electronically stored.

### *The Add-Ons*

19.     Thereafter, Plaintiff discovered that among the sale documents was a Retail Installment Simple Finance Charge Agreement (the "RISC").

20.     The "Itemization of Amount Financed" section of the RISC revealed that the transaction was loaded with add-ons that Plaintiff did not want, did not ask for and did agree to buy including:

- Service Contract  - $2,995.00

- Premier Defense - $1,495.00

- Converter Pro 3YR - $1,995.00

- LoJack3YR - $2,090.00



21.     These addons totaling $8,575.00 grossly inflated the cost of the Vehicle, the corresponding taxes, and cost of finance.

22.     Plaintiff never wanted to purchase any of these add-ons. The only add-ons which were disclosed to her was the Service Contact and LoJack which the Dealer falsely represented were required for the purchase of the Vehicle.

23.     Plaintiff called the various third parties relating to the add-ons and tried unsuccessfully to cancel them.

24.     On March 22, 2023, Plaintiff traveled again from her home on Pennsylvania back to the Dealer to discuss cancellation of the unwanted add-ons but was falsely told by the Dealer that the add-ons could not be cancelled.

*__The Vehicle Malfunctions__*

25.     Concerned for the safety of the Vehicle, on March 23, 2023, Plaintiff brought the Vehicle to non-party Reedman Toll Chrysler Dodge Jeep of Springfield ("Reedman Jeep") for a comprehensive safety inspection.  Reedman Jeep advised Plaintiff that a comprehensive inspection could not be performed as the port to which the necessary computer connects was defective and that in such condition, the Vehicle could not even pass inspection.

26.     Reedman Jeep also advised Plaintiff that the Vehicle had previously served as a "fleet vehicle" in conflict with previous representations made by the Dealer to the contrary.

27.     On March 27, 2023, Plaintiff brought the Vehicle to non-party Firestone Complete Auto Care  ("Firestone") for a comprehensive safety inspection.  Firestone confirmed what Plaintiff had been told by Reedman Jeep, that the port to which the necessary computer connects was defective and that in such condition, the Vehicle could not even pass inspection. Firestone further advised Plaintiff that an alignment was needed, that an airbag was exposed under the steering wheel, and the hood and hood latch appeared to be newly installed – all indicators of a  possible wreck that had not been disclosed by the Dealer.

***Forgery Discovered***

28.     Suspicious of the entire transaction, Plaintiff requested that the Bank provide copies of the sale documents.  Plaintiff discovered that the Retail Installments Sales Contract provided by the Bank (the "Second RISC"), a forgery, was not the RISC she signed.

29.     Upon information and belief, the Second RISC is a forgery, the signature was a forgery, the add-ons were omitted, and the sales price differed by thousands of dollars.

30.     The Second RISC is dated March 15, 2023, three days after Plaintiff left the Dealer's location with the Vehicle.

31.     At all relevant times Defendants acted willfully and in bad faith.

32.     The unlawful actions described herein harmed Plaintiff.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF TILA**
(15 U.S.C. § 1601 *et. seq*. TILA)

33.     Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

34.     Plaintiff's transaction as described herein was a consumer credit transaction within the meaning of the TILA, and Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

35.     Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

36.     Defendants are creditors within the meaning of TILA and Regulation Z, 15 USC § 1602(f) and Reg Z § 226.2(a)(17).

37.     The RISC lists a motor vehicle, an article of personal property, as collateral.

38.     The RISC is a written agreement, payable in more than four installments.

39.     The finance charge indicated on the RISC exceeds $1,000.00.

40.     The copy of the RISC that was provided to Plaintiff is inconsistent with oral disclosures made by the Dealer on the date of the transaction.

41.     The copy of the Second RISC, a forgery, is inconsistent with oral disclosures made by the Dealer on the date of the transaction.

42.     Defendants failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA §§ 1631 and 1632 and Regulation Z.

43.     The required purchase of the Addons as a condition of financing is a "finance charges" as defined under TILA § 1605(a) and Regulation Z § 226.4(a).

44.     As a result of Defendants' failure to properly include these and/or other fees and charges as finance charges, the sale price, finance charge, amount financed, and APR disclosed in the RISC are all materially misstated, in violation of TILA and Regulation Z. e.g. § 1638(a)(2) through (5) and §226.18(b), (d), (e), and (h).

45.     Defendants have failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the loan as required under TILA and Regulation Z. e.g. 15 U.S.C. § 1632(a), § 1638(a), and Regulation Z, e.g. 12 C.F.R. § 226.17(a)(1).

46.     As a result of Defendants' incomplete, inaccurate, and materially misstated disclosures, Plaintiff has suffered actual damages, including but not limited to additional charges, some of which are additional fees corresponding to no legitimate good or service and some of which correspond to products that Plaintiff did not want or need, and all of which Defendants added to the transaction incident to the extension of credit.

47.     Had Defendants provided complete and accurate disclosure of all terms, costs, finance charges and interest rates, Plaintiff would not have agreed to purchase the Vehicle on the

terms and conditions imposed on him by Defendants and instead would have sought to purchase

a vehicle without the unwanted and unnecessary additional charges imposed on her.

48.     Additionally, had Defendants provided complete and accurate disclosure of all

terms, costs, finance charges and interest rates, Plaintiff would have sought and obtained an

alternate transaction.

49.     For these reasons, Defendants are liable under TILA and Regulation Z (see, e.g.

15 U.S.C. §§ 1640 and 1641) for statutory damages, actual damages, attorneys' fees, litigation

expenses and costs, for a declaratory judgment that they have violated TILA and Regulation Z,

and for such other or further relief as the Court deems appropriate.

50.     The Bank, upon information and belief, is assignee of the contracts entered into

between the Dealer and Plaintiff as a result, is subject to all claims and defenses as the TILA

violations set forth herein are clear upon the face of the documents assigned.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK MVRISA**
(N.Y.P.P.L. § 301 *et seq.*)

51.     Plaintiff realleges and incorporates each of the above allegations as if fully set

forth herein.

52.     The Dealer is a "retailer seller" within the meaning of MVRISA §301(3).

53.     The transaction as described above involved a "retail installment sale" within the

meaning of MVRISA §301(4).

54.     MVRISA expressly incorporates all TILA disclosure requirements, providing, in

addition to all of its other requirements that "[a]ll items required to be disclosed by the act of

congress entitled "Truth in Lending Act" and the regulations thereunder, as such act and

regulations may from time to time be amended." §302(5)(1).

55.     As set forth above, Defendants violated numerous TILA provisions.

56.     As set forth above, the RISC provided to Plaintiff was in gross violation of TILA's requirements.

57.     The violations set forth herein were both knowing and willful.

58.     Defendants had ample opportunities to correct the violations but failed to do so.

59.     For all of the reasons stated herein, under MVRISA § 307, Defendants are barred from recovering any credit service charge, delinquency, or collection charge on the RISC and Plaintiff is entitled to costs and attorney's fees.

### THIRD CAUSE OF ACTION
### DECEPTIVE TRADE PRACTICES
(N.Y. Gen. Bus. Law § 349(h))

60.     Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

61.     Plaintiff is a person within the meaning of N.Y. Gen. Bus. Law § 349(h) who has been injured by reason of the deceptive acts or practices of Defendants.

62.     Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

63.     Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

64.     Upon information and belief, the Dealer routinely hides the true cost of borrowing from its customers by, as in Plaintiff's case, misstating the amounts financed.

65.     Upon information and belief, the Dealer routinely forges buyers' signatures on auto sales documents, as in Plaintiff's case, misstating the amounts financed.

66.     The Dealer's conduct and statements were materially misleading.

67.     These deceptive acts and practices were committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

68.     As a result of these violations of NYGBL §349, Plaintiff suffered pecuniary and non-pecuniary harm.

69.     Upon information and belief, the Dealer's violations were willful and knowing and committed in bad faith.

70.     For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), and declaratory judgment that Defendants' practices are deceptive as defined under § 349.

**FOURTH CAUSE OF ACTION**
**FALSE ADVERTISING**
(N.Y. Gen. Bus. Law § 350)

71.     Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

72.     Pursuant to General Business Law §350-a(1), the term "false advertising" means advertising if such advertising is misleading in a material respect.

73.     The Dealer engaged in unlawful "false advertising" prohibited under General Business Law §350-a(1) by making representations, either by statement, word, design, device, sound or any combination thereof, to Plaintiff and the public -- online and on the dealership lot, that were materially misleading including, but not limited to, that the sale price of the Vehicle was thousands of dollars less than the price it eventually charged.

74.     This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

11

75.     The Dealer's false advertising was done knowingly and willfully and committed in bad faith.

76.     The Dealer's advertising was misleading in a material respect by failing to reveal that the advertised sale price for the Vehicle would not be honored and or would require the purchase of additional products such as the Add-Ons.

77.     As a result of The Dealer's false advertising, Plaintiff has been injured and seeks actual damages, three times the actual damages up to $10,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 350 as well as declaratory judgment that Defendants' practices are false advertising pursuant to General Business Law §350-a.

## FIFTH CAUSE OF ACTION
## COMMON LAW FRAUD

78.     Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

79.     The Dealer asserted false representations of material facts as set forth above, including but not limited to, that the sale price of the Vehicle was as advertised.

80.     The Dealer asserted false representations of material facts as set forth above, including but not limited to, that Plaintiff's purchase of the add-ons was necessary to purchase the Vehicle.

81.     The Dealer asserted false representations of material facts as set forth above, including but not limited to, that the RICS was the operable sales document when in fact the Dealer, upon information and belief, forged Plaintiff's signature on the Second RISC which was ultimately assigned to the Bank.

82.     Upon information and belief, the Dealer knew that the representations were false, or the representations were made with such reckless disregard for the truth that knowledge of the

falsity of the statement can be imputed to it.  This is because the Dealer knew that it had inflated

the cost of the Vehicle and that it had forged Plaintiff's signature.

83.    The Dealer made these false representations for the purpose of defrauding

Plaintiff and to entice her to buy the Vehicle at a cost many thousands of dollars more than he

had agreed.

84.    Had the Dealer told Plaintiff the truth, Plaintiff would not have purchased the

Vehicle from the Dealer on the terms stated in the RISC.

85.    Plaintiff justifiably relied upon the Dealer's misrepresentations in agreeing to sign

the RISC.

86.    Plaintiff suffered damages as a direct result of the reliance upon the

misrepresentations.

**SIXTH CAUSE OF ACTION**
**NY UCC §2-313**
(Breach of Express Warranty)

87.    Plaintiff realleges and incorporates each of the above allegations as if fully set

forth herein.

88.    The Dealer is a merchant and seller with respect to the Vehicle.

89.    As set forth above, prior to and at the time of the sale of the Vehicle to Plaintiff,

for the purpose of inducing Plaintiff to consummate the transaction, as part of the basis of the

bargain, the Dealer represented and expressly warranted to Plaintiff that the Vehicle was in good

operable condition.

90.    The Dealer breached said express warranties in that the Vehicle was sold to

Plaintiffs in inoperable condition.

91.    The Dealer's misrepresentations of material fact were made in order to, and in

fact did, induce Plaintiff to buy the Vehicle.

13

92.     Plaintiff, in agreeing to consummate the transaction, relied upon the Dealer's express warranties as to the condition of the Vehicle.

93.     Plaintiff would not have bought or been interested in buying the Vehicle at any price had they been aware that of the true condition.

94.     As a direct result of the Dealer's breach of express warranties, Plaintiff suffered actual damages, as described herein.

95.     As a direct result of the Dealer's breach of express warranties, Plaintiff is entitled to actual damages, punitive damages, and costs.

**SEVENTH CAUSE OF ACTION**
**NY UCC §2-314**
(Implied Warranty of Merchantability)

96.     Plaintiff realleges and incorporate each of the above allegations as if fully set forth herein.

97.     At all relevant times, the Dealer was a retail merchant with respect to the goods sold to Plaintiff.

98.     In selling the Vehicle to Plaintiff, the Dealer warranted that the Vehicle was of a quality which would at least pass without objection in the trade, was of fair, average quality within the description, and was at least fit for ordinary purposes for which the Vehicle was sold.

99.     In purchasing the Vehicle, Plaintiff relied upon the Dealer's said warranty of merchantability, as well as upon representations and statements constituting express warranties which were made by the Dealer.

100.    The Vehicle was not of merchantable quality and was not suitable for ordinary purposes.

101.    The Dealer breached its warranties of merchantability which had become part of the basis of the bargain between Plaintiff and the Dealer.

102.    The Vehicle cannot be put into merchantable quality due to the performance issues alleged herein.

103.    Plaintiff hereby notifies the Dealer that she wishes to rescind the sale and rejected the Vehicle.

104.    As set forth above, the Dealer has refused to accept return of the Vehicle and has refused to refund to Plaintiff the purchase price or any other amount.

105.    As a direct result of the Dealer's breach of the implied warranty of merchantability, Plaintiff suffered actual damages as set forth herein.

106.    As a direct result of the Dealer's breach of the implied warranty of merchantability, Plaintiff is entitled to actual damages, punitive damages, and costs.

## EIGHTH CAUSE OF ACTION
## NEW YORK VEHICLE AND TRAFFIC LAW §417

107.    Plaintiff repeats, re-allege, and incorporate by reference the foregoing paragraphs.

108.    The Dealer is used car dealers subject to the requirements of VTL §417.

109.    VTL §417 required the Dealer to provide Plaintiff with a certification that the Vehicle was in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.

110.    VTL §417 further provides that the failure of the vendor to deliver to the vendee the certificate required or delivery of a false certificate knowing the same to be false or misleading or without making an appropriate inspection to determine whether the contents of such certificate are true shall constitute a violation of VTL §417.

111.    VTL §417 codifies and seeks to enforce the important, non-waivable, public rights to safe and roadworthy vehicles and safe roadways.

112.    The Dealer's conduct violated§ 417 in that the Vehicle was not in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.

113.    By selling the Vehicle, the Dealer falsely represented that the Vehicle met the non-waivable, statutory warranty of serviceability created by §417.

114.    Each of the above listed failures to comply with VTL §417 constitutes an independent violation of the statute.

115.    The Dealer's conduct, in knowingly selling Plaintiff an inoperable vehicle, without disclosing, and actively concealing, the status of the Vehicle, using deceitful means, demonstrates a high degree of moral culpability.

116.    As a result of the Dealer's breach of VTL §417, Plaintiff suffered actual damages, as set forth herein.

117.    As a result of the Dealer's breach of VTL §417, Plaintiff is entitled to actual damages, treble damages, punitive damages, costs, and attorney's fees.

**NINTH CAUSE OF ACTION**
**MAGNUSSON MOSS WARRANTY ACT**
(15 U.S.C. §§ 2301, *et seq*.)

118.    Plaintiff repeats, re-alleges, and incorporate by reference the foregoing paragraphs.

119.    The Dealer is a "supplier" and/or "warrantor" within the meaning of the MMWA, §2301(4).

120.    Plaintiff is a "consumer," as that term is defined under the MMWA, § 2301 (3).

121.    The Vehicle sold to Plaintiff is a "consumer product" within the meaning of the MMWA, § 2301(1).

122.    There is no dispute resolution mechanism which applies to Plaintiff's warranty dispute.

123.    In the alternative, the Dealer has no dispute resolution mechanism which is enforceable under the MMWA and, also in the alternative, Plaintiff's good-faith attempts to resolve any dispute with the Dealer, which was rebuffed, constitutes noncompliance with any reasonable dispute resolution requirement.

124.    The Dealer violated the MMWA and its implementing regulations by breaching the implied and express warranties, as well as the statutory warranty of serviceability created under VTL §417, as set forth herein.

125.    As a result of these violations, pursuant to MMWA §2310(d), Plaintiffs are entitled to actual damages as set forth above, punitive damages and reasonable attorney's fees, costs, and expenses.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in her favor and grant the following relief:

(a)    **On the First Cause of Action:**

An award in favor of Plaintiff and against Defendants for violating TILA awarding (a) statutory damages, (b) actual damages (c) punitive (d) costs; (e) reasonable attorneys' fees, and (f) ordering Plaintiff' obligation under the RISC void;

(b)    **On the Second Cause of Action:**

Declaratory judgment against Defendants that they have violated MVRISA and an order barring recovery of any credit service charge, delinquency, or collection charge under the RISC and disgorging all such monies paid to date, as well as costs of the action;

(c)    **On the Third Cause of Action:**

An award in favor of Plaintiff and against Defendants for violating NYGBL §349 awarding (a) actual damages, (b) three times the actual damages up to $1,000.00, and (c) costs and reasonable attorneys' fees;

(d)     **On the Fourth Cause of Action:**

An award in favor of Plaintiff and against the Defendants for violating NYGBL §350 awarding (a) actual damages, (b) three times the actual damages up to $10,000.00, and (c) costs and reasonable attorneys' fees;

(e)     **On the Fifth Cause of Action:**

An award in favor of Plaintiff and against Defendants for fraud awarding actual, exemplary, and punitive damages, and attorney's fees and costs;

(f)     **On the Sixth Cause of Action:**

judgment in favor of Plaintiff and against Defendants ordering a full refund, revocation and/or damage for breach of warranty, plus incidental and consequential damages, punitive damages, and attorney fees;

(g)     **On the Seventh Cause of Action:**

judgment in favor of Plaintiff and against Defendants ordering a full refund, revocation and/or damage for breach of warranty, plus incidental and consequential damages, punitive damages and attorney fees;

(h)     **On the Eighth Cause of Action:**

judgment in favor of Plaintiff and against Defendants ordering a full refund, revocation and/or damage, plus incidental and consequential damages, punitive damages, and attorney fees; ;

(i)     **On the Ninth Cause of Action:**

Judgment in favor of Plaintiff and against Defendants under the MMWA awarding actual damages, punitive damages, reasonable attorney's fees, costs and expenses, and declaratory judgment that Defendants have violated the MMWA; and; and

(j)     **Any additional and further relief as may be deemed just and appropriate.**

Dated: Nyack, New York
     February 5, 2024

**THE LAW OFFICES OF
ROBERT J. NAHOUM, P.C.**
*Attorneys for Plaintiffs*

By:_____
    **ROBERT J. NAHOUM**
48 Burd Street, Suite 300
Nyack, NY 10960
Telephone No.: (845) 450-2906
Facsimile No.: (888) 450-8640
Email: RJN@NahoumLaw.com